D. Maimon Kirschenbaum
Michael DiGiulio
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------x
**AMY SINAVSKY,**

                **Plaintiff,**

  v.

**NBCUNIVERSAL MEDIA, LLC d/b/a NBC,**
**and CHRISTINE MACDONALD,**


               **Defendants.**
---------------------------------------------------------x

**COMPLAINT**

**CASE NO.:**

**DEMAND FOR JURY TRAIL**

Plaintiff Amy Sinavsky alleges as follows:

**INTRODUCTION**

1. Plaintiff Amy Sinavsky worked as a Technical Associate/Operator for Defendant NBCUniversal Media, LLC from August 2015 until May 10, 2020. Ms. Sinavsky is a 47-year old Asian American woman and the only Asian that worked in NBC's Division of Technical Operations. She was fired because of her race.

2. As a Technical Operator, Ms. Sinavsky worked on live broadcasts for NBC and was responsible for, among other things, operating the teleprompter for many of NBC's highest profile news personalities, including Rachel Maddow, Brian Williams, and Andrea Mitchell.

3. Ms. Sinavsky was an excellent employee. She was well liked by her colleagues and supervisors, received excellent professional reviews and accolades, and was dependable and

1

flexible with her long work hours – she always agreed to take on last minute assignments that no one else wanted at inconvenient times and for long hours.

4. As the Coronavirus pandemic hit New York City in the spring of 2020, NBC slowly began ordering staff to work from home. In late March 2020, NBC began providing at-home teleprompting equipment to employees in the Division of Technical Operations. Plaintiff requested multiple times to be given at-home equipment but was refused each time. Defendants provided various inconsistent, vague, and contradictory reasons for not providing her the equipment. One of the reasons, that Defendants did not have any more equipment, was demonstrably false.

5. By the end of April 2020, Defendants have provided equipment to every other full-time team member on Plaintiff's team – many of whom were more junior, and had less experience, than Plaintiff and none of whom were Asian. Plaintiff was the only Asian member on her team, and the only full-time member of her team not to receive the at-home equipment.

6. In early May 2020, Defendants fired Plaintiff, ostensibly because she did not have (i.e., Defendants did not give her) the at-home equipment required to do her job. Plaintiff's termination was discriminatory and motivated by Plaintiff's race. Plaintiff was the only Asian on the team and the only full-time member of the team not to be selected to work from home.

7. Plaintiff had more experience, and more skills, than many members of the team that were given the home equipment. Plaintiff's exclusion from access to this equipment cannot be explained by Plaintiff's work product or relative value on the team. Defendants have offered various different explanations for why they did not provide Plaintiff the at-home equipment. Each of these changing rationales do not make sense on their face, and together, are highly suggestive of an improper motive.

8. Defendants terminated Plaintiff's employment because of her Asian ethnicity. Plaintiff's work was excellent, and all of the various changing explanations that Defendants give to justify her termination are nonsensical, contradictory, and patently pre-textual. Plaintiff's termination was unlawful.

## JURISDICTION AND VENUE

9. Plaintiff Amy Sinavsky brings this action against Defendant NBCUniversal Media, LLC d/b/a NBC and Defendant Christine MacDonald alleging discrimination claims brought under 42 U.S. Code § 1981 ("Section 1981"); New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"); and New York City Human Rights Law, ("NYCHRL"), New York Administrative Code §§ 8-107(1), *et al.,* and alleging overtime violations brought under the Fair Labor Standards Act ("FLSA") 28 U.S.C. §§ 201 *et seq,* and New York Labor Law §§ 190 *et seq*.

10. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under Section 1981 and the FLSA. This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## PARTIES

12. Defendant NBCUniversal Media, LLC d/b/a NBC ("Defendant NBC" or "NBC") is a limited liability company with its principal office located at 30 Rockefeller Plaza, New York, New York 10112.

13. Defendant NBC's gross annual sales exceed $500,000.

14. Defendant Christine MacDonald ("Defendant MacDonald") is a Manager of Technical Operations at Defendant NBC and was Plaintiff's direct supervisor beginning on approximately November 18, 2016.

15. Plaintiff Amy Sinavsky ("Plaintiff" or "Ms. Sinavsky") was employed by Defendant NBC as a Technical Associate / Operator from August 17, 2015 until May 10, 2020, when she was terminated because of her race.

## FACTS

16. Defendant NBC and Defendant MacDonald committed the acts alleged in this Complaint knowingly, intentionally and willfully.

17. Plaintiff began working at Defendant NBC as a Technical Associate / Operator in August 2015.

18. Plaintiff was originally hired by Stephen Haig. Mr. Haig was Plaintiff's manager and direct report until approximately November 18, 2016, when he was replaced by Defendant MacDonald.

19. Plaintiff is a member of the National Association of Broadcast Employees and Technicians, the Broadcasting and Cable Television Workers Sector of the Communications Workers of America, AFL-CIO-CLC ("Union" or "NABET-CWA").

20. As a member of the Union, Defendant NBC classified Plaintiff as a "daily hire" employee.

21. As a "daily hire" employee, Plaintiff's schedule was flexible, and she would work the hours and times based on the arising needs of Defendant NBC.

22. Plaintiff worked 3 "steady days" per week. She generally worked 2:30pm-11:00pm on Wednesday, 2:00pm-11:00pm on Saturdays, and 3:00pm-11:00pm on Sundays. In addition, Defendant NBC routinely scheduled plaintiff to work 2-4 more days per week.

23. As part of her employment, Plaintiff was guaranteed a 2-week notice period before Defendant NBC altered or canceled her 3 "steady day" work shifts.

24. Plaintiff worked 5-7 days a week for Defendant NBC, for which she was paid approximately $75,000 per year.

25. Defendant NBC issued Plaintiff W-2 tax forms for each year that Plaintiff worked.

26. As a Technical Associate / Operator, Plaintiff worked on live news broadcasts for Defendant NBC.

27. Plaintiff was responsible for, among other things, Steadicam Utility, Audio Assist A2, FlashCam in 3E & 6E, and Prompter Operations.

28. In practice, Plaintiff's main task was to operate the teleprompter for Defendant NBC's news programs.

29. Plaintiff excelled at her job and was often assigned the task of teleprompting Defendant NBC's highest profile news personalities, including Rachel Maddow, Brian Williams, and Andrea Mitchell.

30. Plaintiff's work included teleprompting both live shows, pre-tapes and post-tapes, and various special reports.

31. Plaintiff was an excellent employee. She was well liked by her colleagues and supervisors, received excellent professional reviews and accolades, and was dependable and flexible with her work hours – she always agreed take on last minute assignments that no one else wanted at inconvenient times and for long hours.

32. Plaintiff excelled at her job and was one of the few employees in her division that had not been "blackballed" (i.e., banned) from working on any of NBC's news programs.

33. Over the course of her tenure, Defendant NBC came to rely upon Plaintiff to pick up the slack during shows whenever issues arose.

34. Plaintiff was proficient in many aspects of the production of Defendant NBC's shows and was expected to, and often did, stand in for the stage manager if an issue arose requiring the manager's attention.

35. By all accounts, Plaintiff was a model employee – dependable, proficient, and professional.

36. As the Coronavirus pandemic hit New York City in the spring of 2020, NBC was extremely slow to respond. As businesses, schools, and the government began altering operations and arranging for their employees to work from home, NBC continued to require their employees to work in the studio in close proximity to each other.

37. By March 2020, many NBC employees had contracted the coronavirus and it was widely known among the staff that the virus was circulating throughout the studios at 30 Rockefeller Plaza where employees feared for their health and safety.

38. In late March 2020, Plaintiff went to her doctor because she was experiencing symptoms of the coronavirus and had been exposed to a person known to have tested positive for the virus.

39. Plaintiff's doctor ordered her to quarantine for 14-days, whereby Plaintiff took sick leave work from April 1, 2020 through April 15, 2020.

40. While in quarantine, Plaintiff learned from co-workers on her team (not from her supervisor, Defendant MacDonald) that NBC had begun distributing at-home teleprompting equipment to employees in the Division of Technical Operations in order to allow employees to work from home.

41. On April 11, 2020, Plaintiff spoke with her direct supervisor, Defendant MacDonald and notified her that Plaintiff heard that NBC and Defendant MacDonald was distributing at-home teleprompting equipment to employees on her team and that she was interested in receiving the equipment and working from home.

42. Defendant MacDonald confirmed that she had distributed at-home equipment to Plaintiffs' team members and had not notified Plaintiff of the opportunity to work from home. Defendant MacDonald further responded that Defendants were conducting a "slow roll out" of the home prompting equipment and that while NBC was not distributing more home equipment at that time, Defendant MacDonald would keep Plaintiff in the loop if they started sending more equipment home.

43. On April 15, Plaintiff returned to work in NBC's studios. But it soon became clear that Defendants were continuing to distribute at-home teleprompting equipment to employees and directing them to work from home and Defendants were not keeping Plaintiff "in the loop."

44. Indeed, a growing portion of Plaintiff's responsibility during this time was to be in the studio to manage, organize, and facilitate the teleprompters who were working from home and to catch and fix any issues that arose in studio during the tapings.

45. On April 23, 2020, Plaintiff emailed Defendant MacDonald to again request the she be provided the at-home equipment, as other employees had been, and to reiterate how committed she was to her job at NBC. Plaintiff reminded Defendant MacDonald how flexible she had been in the past with scheduling – covering nights, weekends, and holidays for other team members who were unable to work due to child care, scheduling conflicts, or pre-planned vacations.

46. Defendant MacDonald responded by staying that she "appreciated [Plaintiff's] flexibility and willingness to work", but that NBC had already distributed its home prompter systems. However, this was untrue. Defendant MacDonald further reiterated that if Defendants were going to deploy more, she would consider Plaintiff.

47. However, NBC continued to deploy more at-home systems, and by the end of the month, every other full-time member of Plaintiff's team – many of whom were more junior, and had less experience, than Plaintiff and none of whom were Asian – had received at-home teleprompting equipment except for Plaintiff.

48. On May 6, 2020, Defendant MacDonald called Plaintiff, while Plaintiff was working in the studio, and told Plaintiff that, starting the following week, NBC would be shifting all production responsibilities to the at-home employees, and that Plaintiff would not be needed after May 10, 2020, because Plaintiff did not have the required at-home equipment.

49. Defendant MacDonald stated that Plaintiff's work had been excellent and that she was in good standing with NBC. But when Plaintiff asked Defendant MacDonald whether there were any other opportunities for full time or part time work, Defendant MacDonald stated that there were none.

50. Plaintiff pressed Defendant MacDonald about Defendant NBC's policy of providing all "daily hire" employees with a two-week notice before canceling any "steady days"

and asked whether she would at least be provided two weeks before her steady days were cancelled. Defendant MacDonald did not have an answer to this question. In the end, Defendants did not provide Plaintiff with a two-week notice – Plaintiff was notified of her termination on May 6, 2020 and her last day of work was May 10, 2020.

51. On May 7, 2020, via email, after Plaintiff asked Defendant MacDonald why Plaintiff had not been given the at-home equipment that every other team member on her team received, Defendant MacDonald responded nonsensically by saying: "I chose the people to get home systems who I thought would be the right choice for them."

52. The following day, on May 8, 2020, Plaintiff attended a town hall conference call with Greg Francis, the Vice President of Technical Operations for NBC. During this call, Mr. Francis told all of the employees in the Division of Technical Operations that all of the employees in the division that had the skills and could work remotely would be getting adequate equipment to allow them to work from home. However, Plaintiff had the skills and could work remotely but did not receive the at-home equipment, nor was she provided with further explanation for this decision.

53. Plaintiff then complained to her Union representative and to NBC's labor relations department. Plaintiff was informed that, actually, Defendant MacDonald was "mistaken" about her reasons for not providing Plaintiff the at-home equipment. The real reason, according to Defendant NBC, is that Defendant MacDonald had run out of at-home systems.

54. Considering that the at-home equipment can be purchased over-the-counter at any electronics store, it is clear that Defendant NBC's proffered excuse is untenable.

55. Nevertheless, the only other member of Plaintiff's team that was fired during this time was an employee who was offered the equipment, but could not use it at home because the employee did not have adequate internet connection.

56. Plaintiff was never offered this particular set of at-home equipment. Clearly, if Defendant NBC's rationale were true – that NBC ran out of equipment and had none to offer Plaintiff – they would have offered the equipment they offered to the other employee (who did not take it) to Plaintiff. They did not.

57. Throughout April and May, Defendant MacDonald gave various, vague, contradictory, and false reasons for not providing Plaintiff with the at-home equipment. First, she told Plaintiff that NBC was only doing a "slow roll out" of the systems. After Defendants continued to provide at-home systems to Plaintiff's teammates, Plaintiff questioned Defendant MacDonald again. This time Defendant MacDonald said that she had deployed all of the at-home systems for the time being, but as NBC re-assigned people to work from home, she would keep Plaintiff in mind for the next round of at-home system deployments. When finally, after every other team member received an at-home system, and Plaintiff was fired, Defendant MacDonald justified her decision nonsensically by stating that she chose the at-home employees based on each employee's individual needs. Defendant MacDonald did not explain why Plaintiff's repeated requests for at-home equipment did not communicate Plaintiff's own needs to work from home.

58. Defendants have offered many different explanations for why they did not provide Plaintiff the at-home equipment, and, thus, for why she was fired. Each of these changing rationales do not make sense on their face, and together, are highly suggestive of an improper motive.

59. Plaintiff was the only Asian on her team, and was the only full-time member of her team that was not offered at-home equipment. Plaintiff had more experience, and more skills, than many members of the team that were given the home equipment. In fact, Defendants maintain that she was still "highly valued" by NBC. Plaintiff's exclusion from access to this equipment cannot be explained by Plaintiff's work product or relative value on the team.

60. Defendants terminated Plaintiff's employment because of her Asian ethnicity. Plaintiff's work was excellent, and all of the various changing explanations that Defendants give to justify her termination are nonsensical, contradictory, and patently pre-textual.

### FIRST CLAIM FOR RELIEF
(Section 1981 – Racial Discrimination)

61. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

62. In violation of Section 1981, Defendants intentionally and willfully discriminated against Plaintiff on the basis of her race.

63. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

64. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

65. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages and damages for emotional distress, physical

injuries, and medical treatment, punitive damages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. §§ 290 et seq. – Race Discrimination)

66. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

67. In violation of the NYSHRL, Defendants intentionally discriminated against Plaintiff on the basis of her race.

68. Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

69. As a direct and proximate consequence of Defendants' discrimination against Plaintiff, she has suffered, and continues to suffer, substantial monetary and non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation and anguish.

70. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to: damages for lost wages, emotional distress, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## THIRD CLAIM FOR RELIEF
### (New York City Human Rights Law ("NYCHRL") – Race Discrimination)

71. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

72. In violation of the NYCHRL, Defendants discriminated against Plaintiff on the basis of her race.

73. As a direct and proximate consequence of Defendants' discrimination against Plaintiff, Plaintiff suffered, and continues to suffer, substantial monetary damages, including, but not limited to, a loss of income and employment benefits.

74. As a direct and proximate consequence of Defendants' discrimination against Plaintiff, Plaintiff suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation and anguish.

75. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to backpay, lost employment benefits, and damages for emotional distress, as well as front pay, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**
**(New York State Human Rights Law – N.Y. Exec. Law § 296(6) –**
**Aiding and Abetting Discrimination)**

76. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

77. In violation of the NYSHRL, Defendant NBC aided and abetted discrimination and retaliation against Plaintiff on the basis of her race.

78. As a direct and proximate result of Defendant NBC aiding and abetting discrimination and retaliation against Plaintiff, she has suffered, and continues to suffer,

substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

79. As a direct and proximate result of Defendant NBC's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

80. Defendant NBC's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

81. As a result of Defendant NBC's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for emotional distress, physical injuries, and medical treatment; punitive damages; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

**FIFTH CLAIM FOR RELIEF**
**(New York City Human Rights Law –§ 8-107(6) –**
**Aiding and Abetting Discrimination)**

82. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

83. In violation of the NYCHRL, Defendant NBC aided and abetted discrimination and retaliation against Plaintiff on the basis of her race.

84. As a direct and proximate result of Defendant NBC aiding and abetting discrimination and retaliation against Plaintiff, she has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

85. As a direct and proximate result of Defendant NBC's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

86. Defendant NBC's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

87. As a result of Defendant NBC's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for emotional distress, physical injuries, and medical treatment; punitive damages; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(A) For compensatory, liquidated and punitive damages in an amount to be determined by the trier of fact;

(B) For reasonable attorneys' fees, interest, and costs of suit;

(C) For such other and further relief as the Court may deem just and equitable.

| | |
|---|---|
| Dated:  New York, New York<br>November 2, 2020 | Respectfully submitted,<br><br>JOSEPH & KIRSCHENBAUM LLP<br><br>By:<br>*/s/ Michael DiGiulio*<br>D. Maimon Kirschenbaum<br>Michael DiGiulio<br>32 Broadway, Suite 601<br>New York, NY 10004<br>Tel: (212) 688-5640<br>Fax: (212) 688-2548<br><br>*Attorneys for Plaintiff* |

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.