**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**AMY SINAVSKY,**

                    **Plaintiff,**              **Civil Action: 1:20-cv-09175**

**v.**

**NBCUNIVERSAL MEDIA, LLC d/b/a**
**NBC, and CHRISTINE MACDONALD**

                    **Defendants.**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO COMPEL ARBITRATION AND DISMISS,**
**OR IN THE ALTERNATIVE, STAY THIS ACTION**

JOSEPH & KIRSCHENBAUM LLP
D. Maimon Kirschenbaum
Michael DiGiulio
32 Broadway, Suite 601
New York, NY 10004
212-688-5640

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

I.  PRELIMINARY STATEMENT ................................................................................ 1

II.  STATEMENT OF FACTS ......................................................................................... 3

    A.  The Parties ........................................................................................................ 3

    B.  The Collective Bargaining Agreement ............................................................ 3

    C.  Solutions .......................................................................................................... 5

    D.  Plaintiff is Fired and Commences This Action ............................................... 5

III.  ARGUMENT ............................................................................................................. 7

    A.  Legal Standard ................................................................................................. 7

    B.  This Court Has Jurisdiction to Decide the Question of Arbitrability ............... 8

    C.  Plaintiff Did Not Clearly and Unmistakably Waive Her Right to Bring Statuatory Discrimination Claims in Court ............................................................................ 12

IV.  CONCLUSION ........................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**

*Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp*, 230 F.3d 569 (2d Cir. 200)......8, 17

*Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522 (2d Cir. 2011) ...7

*Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003) ........................................................7

*Bezek v. NBC Universal*, No. 3:17-CV-1087 (JCH), 2018 U.S. Dist. LEXIS 86421 (D. Conn. May 23, 2018)..........................................................................................................................10

*Bozetarnik v. Mahland*, 195 F.3d 77 (2d Cir. 1999) .............................................................7

*Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*,
        189 F.3d 289 (2d Cir. 1999)..................................................................................7,8

*Decker v. NBCUniversal Media, LLC*, Case No. 150719/18, 2018, N.Y. Misc. LEXIS 4449 (N.Y. Sup. Ct. Oct. 5, 2018) ...........................................................................................10,16

*Gingras v. Think Fin., Inc.,* 922 F.3d 112 (2d Cir. 2019)......................................................8

*Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002).........................................................9

*Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 83 (2d Cir. 2016)................................passim

*Svensson v. Securian Life Ins. Co.,* F.Supp.2d 521(S.D.N.Y. 2010) ....................................17

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010) .......................................................8

*Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70 (1998)...................................................12

**Statutes**

9 U.S.C. § 4...................................................................................................................... 1

42 U.S.C. § 1981 ............................................................................................................. 3,6

N.Y. Exec. Law § 296....................................................................................................... 3,6

New York Admin. Code §§ 8-107(1) ................................................................................ 3,6

New York State Rules of Professional Conduct 3.3(a)(1)............................................. 12

**Other**

Merriam-Webster Dictionary (https://www.merriam-webster.com/dictionary/arise) ...........15

Plaintiff Amy Sinavsky ("Sinavsky" or "Plaintiff") respectfully submits this Memorandum of Law in Opposition to Defendants NBCUniversal Media, LLC ("NBC") and Christine MacDonald ("MacDonald") (collectively, "Defendants") Motion to Compel Arbitration Pursuant to the Federal Arbitration Act, 9 U.S.C. § *et seq.* ("FAA") and Federal Rules of Civil Procedure 12(b)(1) and (6). As explained below, the Court should deny Defendants' motion and allow the case to proceed in this Court.

## I.     PRELIMINARY STATEMENT

For five years, Plaintiff worked for NBC as a Technical Associate Operator and was a member of the National Association of Broadcast Employees and Technicians, the Broadcasting and Cable Television Workers Sector of the Communications Workers of America, AFL-CIO-CLC ("Union" or "NABET-CWA"). As a member of the Union, Defendants and Plaintiff's relationship was governed by the explicit terms of a collective bargaining agreement (the "CBA"). In May 2020, at the height of the covid-19 pandemic in New York City, Defendants unlawfully terminated Plaintiff's employment because of her Asian ethnicity. Plaintiff now seeks to vindicate her federal and state statutory rights in this Court.

Plaintiff may bring these statutory claims in this Court because she did not "unmistakably" waive her right to do so. As an initial matter, this Court has jurisdiction to decide whether the CBA's arbitration provision covers Plaintiff's claims because Plaintiff has not agreed to delegate the question of arbitrability to arbitration. Simply put, there is no delegation clause in the CBA. And the only delegation clause that Defendants cite is located in another document, known as "Solutions," that was not incorporated into the CBA. Furthermore, the delegation clause in Solutions, by its own terms, only applies to issues related to the interpretation of Solutions, not the CBA.

1

The CBA's arbitration provision is clear and straightforward. It requires only that Plaintiff arbitrate any and all contractual claims of discrimination. That is, any claim that "arises under" NBC's agreement not to discriminate against Plaintiff. By its own terms it does not require Plaintiff to arbitrate any statutory claims – which arise out of the statutes themselves, not the CBA. This interpretation of the CBA is required by the Second Circuit's decision in *Lawrence v. Sol G. Atlas Realty Company*, which recognized that anti-discrimination provisions in collective bargaining agreements create separate and enforceable contractual rights to be free from discrimination and that the waiver of any separate statutory rights must be clear and unmistakable.

To be clear, Plaintiff does not deny that the waiver provision in the CBA bars her from bringing some claims in Court. And Plaintiff does not deny that it was *possible* for Plaintiff to have waived her right to bring the statutory claims in this case. She just did not waive those rights here. The plain language of the waiver provision in the CBA is straightforward and applies only to claims that "arise" out of the CBA's anti-discrimination provision. Plaintiff's argument is not "tired" or gimmicky. It respects the actual meaning of the words in, and the structure of, the CBA. The anti-discrimination provision is an important part of the CBA that the Union obtained for the benefit of its members, which created additional protections and remedies that went above and beyond those created by the anti-discrimination statutes. Thus, Plaintiff's waiver of her right to assert a contractual violation in this Court is meaningful.

Finally, even if the Court disagrees that Plaintiff's reading of the arbitration provision in the CBA is the best reading, it is clearly a plausible reading. As such, the arbitration provision in the CBA does not provide a clear and unmistakable waiver of Plaintiff's statutory right to bring her claims in this Court. This Court should deny Defendants' motion.

2

## II.     STATEMENT OF FACTS

### A.  The Parties

Plaintiff Amy Sinavsky is a former employee of Defendants NBC and MacDonald, a Manager of Technical Operations at NBC.[1] Complaint ¶¶12-15 (Dkt. No. 1). Plaintiff was employed by Defendants as a Technical Associate Operator from August 17, 2015 until May 10, 2020, when she was terminated because of her race. Complaint ¶15. Plaintiff's complaint alleges that Defendants terminated her employment because of her Asian ethnicity in violation of 42 U.S. Code § 1981 ("Section 1981"); the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"); and the New York City Human Rights Law, ("NYCHRL"), New York Administrative Code §§ 8-107(1), *et al.* Complaint ¶¶61-87.

Plaintiff is a member of the National Association of Broadcast Employees and Technicians, the Broadcasting and Cable Television Workers Sector of the Communications Workers of America, AFL-CIO-CLC ("Union" or "NABET-CWA"). Complaint ¶19. As a member of the Union, Defendant NBC classified Plaintiff as a "daily hire" employee. Complaint ¶20. As a "daily hire" employee, Plaintiff's schedule was flexible, and her value to Defendants lay in her ability to work the hours and times based on the arising needs of Defendants. Complaint ¶21.

### B.  The Collective Bargaining Agreement

As a member of the Union, Plaintiff's employment relationship with Defendants is dictated by the explicit terms of a collective bargaining agreement (the "CBA") between the Union and NBC. Mukhopadhyay Aff., ¶¶7-8. The CBA covers:

Those subjects, which are uniformly applicable to substantially all of the basic

---

[1] With this memorandum, Plaintiff submits the February 26, 2021 declaration of Michael DiGiulio ("DiGiulio Decl.") and exhibits thereto. As used herein, "Mukhopadhyay Aff." refers to the Affirmation of Indraneil Mukhopadhyay and accompanying exhibits submitted by Defendants in support of their motion (Dkt. Nos. 13-1, 13-2, and 13-3) and "Cardin Aff." refers to the affirmation of Kelly Cardin and accompanying exhibits submitted by Defendants in support of their motion (Dkt. Nos. 14 and 14-1). Plaintiff also cites to the initial complaint in this action. (Dkt. No. 1)

3

> relationships, hours of work and general conditions of employment, including a procedure for prompt, equitable adjustment of grievances to the end that there shall be no work stoppages or other interferences with operations during the life of these Agreements.

DiGiulio Decl. Ex. A, p. 1.[2]

> Relevant here, Section 2.1 of the CBA is an anti-discrimination provision which states that:

> Neither the Union nor the Company will discriminate against any employee because of race, creed, age, sex, sexual orientation, disability, color, national origin, religion, or any other characteristic protected by applicable federal, state or local law, in violation of such law, including but not limited to…Sections 1981 through 1988 of Title 42 of the United States Code…the New York State Human Rights Law, the New York City Human Rights Code…or any other federal, state or local law prohibiting discrimination.

Mukhopadhyay Aff., Ex. A, p. 2. Pursuant to the plain language of this provision, NBC has agreed not to discriminate against any employee in any manner, including in ways that violate any federal, state, or local law. In other words, in Section 2.1, NBC has made an additional agreement with the Union that it will not violate anti-discrimination laws. This provision creates additional contractual rights for members of the Union to be free from discrimination that goes above and beyond the statutory rights that all employees enjoy.

In Section 20.1, the CBA goes on to provide that an employee may file a grievance "alleging that [NBC] has violated the second sentence of Section 2.1." Mukhopadhyay Aff., Ex. A, p. 47. The CBA further provides that the grievance procedures and related dispute resolution mechanisms "shall provide the sole and exclusive procedure for resolution of such claims, and neither the Union or any aggrieved employee may file an action or complaint in court or any claim that arises under Section 2.1, having expressly waived the right to so file." Mukhopadhyay Aff.,

---

[2] In their Memorandum of Law, Defendants cite to this portion of the CBA but do not provide the actual provision of the CBA in their exhibit. For the Court's convenience, Plaintiff has attached this missing relevant provision of the CBA as Exhibit A to the DiGiulio Declaration.

Ex. A, p. 47. Thus, by its own terms, the CBA provides a waiver for only those claims that "arise" under Section 2.1 and that allege NBC violated Section 2.1.

### C.  Solutions

Solutions is a dispute resolution program that is separate and distinct from the CBA. Mukhopadhyay Aff., Ex. B. Relevant here, Solutions has the following delegation clause: "The Arbitrator…shall have exclusive authority to resolve any dispute relating to the applicability, interpretation, formation, or enforceability of this Agreement…" Mukhopadhyay Aff., Ex. B., III.D.18, p. 22. Solutions also provides that "represented employees will be covered by Solutions in the event that Solutions is incorporated into an applicable collective bargaining agreement." Mukhopadhyay Aff., Ex. B., II.F, p. 4.

However, Solutions has not been incorporated into the CBA. The CBA contains only one reference to Solutions. In Section 20.1, the CBA provides that an "aggrieved employee may submit his or her claim to the Company's mandatory dispute resolution program (currently called "Solutions"), provided such claim complies with the provisions of such program." Mukhopadhyay Aff., Ex. A, p. 47. The CBA contains no language that explicitly incorporates "Solutions" or any other particular dispute resolution manual or guide. Neither the Union, nor the Plaintiff, have entered into an agreement with NBC that binds them to the terms of the "Solutions" manual or to any other particular dispute resolution program.

### D.  Plaintiff is Fired and Commences This Action

On May 10, 2020, at the heigh of the Covid-19 pandemic in New York City, Defendants' terminated Plaintiff's employment. Complaint ¶15, 48, 50. Subsequently, the parties agreed to attend a pre-litigation mediation. DiGiulio Decl. ¶3. Defendants insisted that the mediation be governed by the "Solutions" manual, and Plaintiff agreed to conduct the mediation pursuant to the

Solutions. *See* Affirmation of Kelly Cardin, Esq., Ex. 1. However, Plaintiff's counsel made it clear to Defendants' counsel that Plaintiff disputed Defendants' position that Plaintiff was required to bring her claims pursuant to "Solutions" and intended to reserve all rights to object to the applicability of the Solutions manual to Plaintiff's claims should the mediation fail. DiGiulio Decl. ¶5, Ex. B. On November 2, 2020, Plaintiff initiated this action. She alleges that Defendants terminated her employment because of her Asian ethnicity in violation of 42 U.S. Code § 1981 ("Section 1981"); the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"); and the New York City Human Rights Law, ("NYCHRL"), New York Administrative Code §§ 8-107(1), *et al.* Complaint ¶¶61-87.

On February 12, 2021, Defendants moved to compel arbitration pursuant to the FAA and FRCP 12(b)(1) and (6). *See* Defendants' Notice of Motion to Compel Arbitration and Dismiss, or in the Alternative, Stay This Action (Dkt. No. 13). Defendants argue that Plaintiff agreed to arbitrate both the issue of arbitrability and her underlying statutory discrimination claims. *See* Memorandum of Law in Support of Defendants' Motion to Compel Arbitration and Dismiss, or in the Alternative, Stay this Action ("MOL") (Dkt. No. 15). Defendants are incorrect, and Plaintiff now opposes Defendants' motion.

### III.    ARGUMENT

This Court should deny Defendants' motion to compel arbitration. The CBA's arbitration provision is straight forward and clear. It requires only that Plaintiff arbitrate her contractual claims to be free from discrimination. It does not contain a clear and unmistakable waiver of either Plaintiff's right for this Court to decide the issue of arbitrability or Plaintiff's right to bring her statutory claims in this Court.

### A.  Legal Standard

"In determining whether a particular dispute is arbitrable [under the Federal Arbitration Act ("FAA")], a court must engage in a two-part inquiry: it must decide (1) whether the parties agreed to arbitrate, and if so, (2) whether the scope of that agreement encompasses the asserted claims." *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 294 (2d Cir. 1999). No presumption of arbitrability applies to the question of whether the parties have agreed to arbitrate. *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 526 (2d Cir. 2011).  "In interpreting a collective bargaining agreement, we read the contract as a whole, and we construe individual phrases in their context, not in isolation." *Bozetarnik v. Mahland*, 195 F.3d 77, 82 (2d Cir. 1999).  "[A]s with all contracts, courts should attempt to read CBAs in such a way that no language is rendered superfluous." *Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp*, 230 F.3d 569, 576 (2d Cir. 200).

Plaintiff must submit to arbitration only if there was a "clear and unmistakable waiver" of her right to pursue her statutory claims in federal court. *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 83 (2d Cir. 2016). "In order for a mandatory arbitration provision in a CBA to encompass an employee's statutory discrimination claims, the inclusion of such claims must be unmistakable, so that the wording is not susceptible to a contrary reading." *Id.* In other words, Plaintiff cannot be compelled to arbitrate if there is a plausible reading of the CBA that she did not waive her right to bring a statutory discrimination claim in court.

A motion to compel arbitration under the FAA is subject to the same standard as a summary judgment motion.  *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).

### B.  This Court Has Jurisdiction to Decide the Question of Arbitrability

This Court has jurisdiction to decide whether the CBA's arbitration provision covers Plaintiff's claims because Plaintiff has not agreed to delegate the question of arbitrability to arbitration. The CBA does not contain a delegation clause. The CBA simply does not address the issue of arbitrability. Defendants cannot and do not point to a provision in the CBA which delegates this issue to arbitration. *See* MOL at 9-12. Instead, the only delegation clause that Defendants argue applies to Plaintiff's claims is contained in the "Solutions" manual, a separate and distinct document, that has not been incorporated into the CBA. But Plaintiff cannot be bound by a delegation clause in an agreement/document to which she is not a party and to which she has not agreed.

Plaintiff does not dispute that the issue of arbitrability *can* be delegated to arbitration. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 88-89 (2010) (recognizing "that parties *can* agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" (emphasis added)). It just has not been delegated here. This Court may enforce a delegation clause only if "an agreement 'clearly and unmistakably' delegates the issue of arbitrability to the arbitrator." *Gingras v. Think Fin., Inc.,* 922 F.3d 112, 125 (2d Cir. 2019). Here, there is no clear and unmistakable waiver because the CBA contains no delegation clause.[3]

Defendants agree that the CBA governs the relationship between the parties. MOL at 3; *see* DiGiulio Decl. Ex. A, p. 1 (the CBA covers Plaintiff's "general conditions of employment").

---

[3] Because Defendants rely on a delegation clause in the Solutions manual, Plaintiff's argument could be viewed either as a step one argument (contract formation) – that the parties did not agree to arbitrate the issue of arbitrability because the Solutions manual is not binding on Plaintiff – or as a step two argument (scope of agreement) – that the arbitration provision in the CBA does contain a waiver of Plaintiff's right to have this Court decide the issue of the arbitrability of Plaintiff's claims. *See Chelsea Square Textiles, Inc.,* 189 F.3d at 294. Under either framework, there was no "clear and unmistakable" delegation of this issue to arbitration.

But surprisingly, Defendants argue that a delegation clause in the "Solutions" manual, not in the CBA, somehow applies to Plaintiff's claims. MOL at 9 ("Solutions, NBCU's mandatory dispute resolution program, contains a delegation clause that requires an arbitrator – not the Court – to decide whether Plaintiff's claims are arbitrable."). Defendants make this argument by repeatedly stating the conclusion that the "Solutions" manual was "incorporated" into the CBA. *See* MOL at 10. This is simply not true. Tellingly, in their memorandum of law Defendants do not actually provide the Court with the language in the CBA that they claim "clearly and conspicuously incorporated" the Solutions delegation clause into the CBA. MOL at 11 n.10, *see also* MOL at 10 (asserting that "Solutions is explicitly mentioned and incorporated into the arbitration provision of the CBA" without providing the incorporation language). That is because there is no such language or provision.

The only reference to "Solutions" in the entire CBA is in the context of providing employees a right to go to Solutions, should they choose to. The provision states that an "aggrieved employee may submit his or her claim to the Company's mandatory dispute resolution program (currently called "Solutions")". Mukhopadhyay Aff., Ex. A, p. 47. Not only does this provision not incorporate any of the terms in the "Solutions" manual into the CBA (let alone the delegation clause, specifically), but it indicates, by noting that "Solutions" is the name of the dispute resolution program that NBC *currently uses*, that any specific term or procedure in a dispute resolution program is subject to change. This is plainly insufficient to show that the current "Solutions" manual was "incorporated" into the CBA. Thus, it is also plainly insufficient to show that Plaintiff "clearly and unmistakably" agreed to delegate the issue of arbitrability of the CBA, via the Solution's manual, to an arbitrator. *See Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002).

Defendants ignore this language in the CBA and, instead, cite to provisions within the Solutions manual itself to argue that Plaintiff is bound by the delegation clause. MOL at 10. Defendants note that Solutions states that "represented employees will be covered by Solutions in the event that Solutions is incorporated into an applicable collective bargaining agreement." MOL at 10, quoting Mukhopadhyay Aff., Ex. B., II.F. Fair enough. But again, Defendants fail to show where Solutions is actually incorporated into the CBA in this case.

Noticeably, Defendants do not actually provide the Court with the delegation clause language from Solutions. MOL at 9. The reason is obvious, because the plain language of the delegation clause in Solutions, by its own terms, applies only to the arbitrability of Solutions, not the CBA. The delegation provision in Solutions provides that: "The Arbitrator…shall have exclusive authority to resolve any dispute relating to the applicability, interpretation, formation, or enforceability of *this Agreement*…" Mukhopadhyay Aff., Ex. B., III.D.18, p. 22 (emphasis added). Thus, even if Solutions was incorporated into the CBA (it was not), the delegation provision only applies to issues related to Solutions, not the CBA. Defendants simply fail to engage with the meaning of the words in these contract provisions and provide no real rationale for how the delegation clause in the "Solutions" manual could possibly bind Plaintiff.[4]

Defendants cite to *Bezek v. NBC Universal*, No. 3:17-CV-1087 (JCH), 2018 U.S. Dist. LEXIS 86421 (D. Conn. May 23, 2018) to show that the delegation clause in Solutions has been applied before; however, the factual differences in this case make it an instructive counter-example as to when Solutions does apply and when it does not. In *Bezek*, the Court was considering whether to vacate or confirm an arbitration award that was issued in an arbitration pursuant to Solutions.

---

[4] While Plaintiff disagrees with the rational underpinning the New York State court decision in *Decker v. NBCUniversal Media, LLC*, Case No. 150719/18, 2018, N.Y. Misc. LEXIS 4449 (N.Y. Sup. Ct. Oct. 5, 2018), which interpreted the same CBA that is at issue here, it is noteworthy that the *Decker* Court did not find that the issue of arbitrability had been delegated to arbitration.

*Id.* at *2-13. In doing so, the Court held that the plaintiff was bound by Solutions, including the delegation clause, because the plaintiff had signed an offer letter that made her employment explicitly contingent on her agreement to be bound by "Solutions." *Id.* at *24-32. But the important distinction is that the plaintiff in *Bezek* was not subject to the CBA at issue here. Unlike the employment contract in *Bezek*, the CBA does not incorporate Solutions and does not contain a delegation clause of any kind.

Finally, the Court should disregard Defendants' argument that because Plaintiff agreed to mediate in good faith "pursuant to Solutions" prior to initiating this action, that Plaintiff has somehow implicitly agreed that Solutions applies or that Plaintiff's counsel's communications surrounding this mediation suggest that Plaintiff "never sought to dispute the applicability or fairness of Solutions' procedure." MOL at 11. Aside for being irrelevant to the issue of whether the CBA contains a clear and unmistakable delegation clause, Plaintiff's counsel is shocked at Defense counsel's disingenuous characterization of the parties' communications and positions surrounding the mediation related to the applicability of Solutions. At all times – in prior communications, at the mediation, and during this litigation – Plaintiff's counsel has always taken the position, and informed Defendants of this position, that Plaintiff is challenging the applicability of the arbitration provision in the CBA, and of Solutions, to her claims. DiGiulio Decl. ¶6, Ex. B. In this context, Defense counsel is clearly aware that, no matter how unartfully drafted, the reservation of rights by Plaintiff's counsel in the communication submitted by Defense counsel to the Court was intended to reserve Plaintiff's rights to challenge the applicability of Solutions to her claims, not to reserve rights provided by the Solutions program.[5] DiGiulio Decl. ¶5; *see*

---

[5] The latter makes no sense, as mediation is the third step in the Solutions procedure and by agreeing to go to mediation pursuant to Solution, Plaintiff would not have been giving up any rights under Solutions, so there would be no rights to reserve. *See* Mukhopadhyay Aff., Ex. B., III.C, p.13-16.

Affirmation of Kelly Cardin, Esq., Ex. 1. Defense counsel's argument that Plaintiff's communication indicated the exact opposite – that Plaintiff intended to be subject to Solutions and "cannot now reverse course" – is demonstrably false, misrepresents Plaintiff's consistent position on this issue, and possibly violates the duty of candor to the Court. *See* New York State Rules of Professional Conduct 3.3(a)(1) ("A lawyer shall not knowingly…make a false statement of fact or law to a tribunal…").

Nevertheless, this Court has jurisdiction to determine whether Plaintiff waived her to right to bring her statutory claims in Court because Plaintiff did not clearly and unmistakably delegate this issue to an arbitrator. There is no delegation clause in the CBA, the Solutions document was not incorporated into the CBA, and the delegation clause in the Solutions document only applies to issues related to Solutions, not the CBA.

## C. Plaintiff Did Not Clearly and Unmistakably Waive Her Right to Bring Statutory Discrimination Claims in This Court

The bar for preventing Plaintiff from bringing her claims in this Court is high. Plaintiff must submit to arbitration only if there was a "clear and unmistakable waiver" of her right to pursue her statutory claims in federal court. *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 83 (2d Cir. 2016). The touchstone in determining whether a waiver incorporates the claims at issue is the plain language of the arbitration provision. *See Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998) ("We will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is explicitly stated. More succinctly, the waiver must be clear and unmistakable."). "In order for a mandatory arbitration provision in a CBA to encompass an employee's statutory discrimination claims, the inclusion of such claims must be unmistakable, *so that the wording is not susceptible to a contrary reading*." *Lawrence,* 841 F.3d at 83 (emphasis added). This standard is significant. A court may not order a case to

arbitration if there is a plausible reading of the arbitration provision that the claims at issue are not included in the waiver language. *See id.* (holding that the CBA did not require arbitration because the provision at issue "may plausibly be interpreted to require arbitration of contractual disputes only."). Here they were clearly not.

In *Lawrence v. Sol G. Atlas Realty Company*, the Second Circuit held that when a CBA contains a clause prohibiting the employer from discriminating against their employees in a manner that violates anti-discrimination statutes, this provision creates an *additional* contractual right for the employee to be free from illegal discrimination (which is separate and in addition to an employee's statutory rights). *Lawrence,* 841 F.3d at 85. The Court explained that "a contractual dispute is not the same thing as a statutory claim, even if the issues involved are coextensive." *Id.* Importantly, when the CBA's arbitration provision references the anti-discrimination provision when describing the claims that are being waived, this reference must make clear that the waived claims include the separate statutory claims and not just the contract claims. *Id.* In *Lawrence,* the Second Circuit held that the plaintiff had not waived their right to bring their statutory claims in court because the contractual language that defined the waived claims– "any disputes under this [anti-discrimination] provision" and "any dispute or grievance between the Employer and the Union" – "could be interpreted to mean disputes under the CBA and not claims under antidiscrimination statutes." *Id.* As *Lawrence* makes clear, the plain language of the arbitration provision matters and dictates whether there is a "clear and unmistakable waiver" of a particular claim.

Just as in *Lawrence*, Section 2.1 of the CBA creates a contractual right (in addition to the statutory right) for Plaintiff to be free from unlawful discrimination. The provision creates an obligation for NBC and the Union to not discriminate based on enumerated characteristics or in a

manner that violates enumerated statutes. *See* Mukhopadhyay Aff., Ex. A, p. 2 ("Neither the Union nor the Company *will discriminate* against any employee because of [enumerated characteristics]…or any other characteristic protected by applicable federal, state or local law, in violation of [enumerated statutes]…" (emphasis added)). This provision does not simply restate NBC's obligation to comply with the relevant anti-discrimination statutes. It is an active provision that creates an additional, contractual, obligation for NBC to not discriminate against Plaintiff. Importantly, just as in *Lawrence*, the "references [to anti-discrimination statutes] define the discrimination that is prohibited, not the type of dispute (statutory rather than just contractual) that is subject to arbitration." *Lawrence,* 841 F.3d at 85.

Here, the type of dispute that is subject to arbitration is defined in a separate arbitration provision.[6] The CBA goes on to state that an employee may file a grievance "alleging that [NBC] has violated the second sentence of Section 2.1." Mukhopadhyay Aff., Ex. A, p. 47. The CBA then provides that arbitration "shall provide the sole and exclusive procedure for resolution *of such claims*, and neither the Union or any aggrieved employee may file an action or complaint in court or any claim that *arises under Section 2.1*, having expressly waived the right to so file." Mukhopadhyay Aff., Ex. A, p. 47 (emphasis added). It is clear from the entirety of this provision that the phrase "such claims" refers to claims that Defendants violated Section 2.1. Mukhopadhyay Aff., Ex. A, p. 47. An allegation that NBC has violated Section 2.1 is distinct and different than an allegation that NBC violated one of the enumerated statutes. *See Lawrence,* 841 F.3d at 85 (explaining that "a contractual dispute is not the same thing as a statutory claim, even if the issues involved are coextensive").

---

[6] Importantly, in *Lawrence*, the arbitration language and the anti-discrimination language were contained in the same provision. *See Lawrence,* 841 F.3d at 85 ("The 'No Discrimination' provision may plausibly be interpreted to require arbitration of contractual disputes only.").

Thus, the CBA is clear that Plaintiff has waived only those claims that "arise under Section 2.1" or that NBC "violated the second sentence of Section 2.1." Section 2.1 prohibits NBC from discriminating against employees in a manner that would violate the relevant anti-discrimination statutes. Merriam-Webster dictionary defines the transitive verb "arise" in three ways: "to begin to occur or to exist", "to come into being or to attention" and "to originate from a source." Merriam-Webster Dictionary (https://www.merriam-webster.com/dictionary/arise). All three definitions support Plaintiff's position here. The only claims that "arise" under (or "begin to occur under" or "originate from") this section are contractual claims for discrimination – claims for statutory violations do not "arise under" this section, as they are available to Plaintiff whether this section exists or not. Furthermore, Defendants cannot argue that claims for violating Section 2.1 and claims for violating one of the listed statutes in Section 2.1 are one and the same claim for purposes of finding a clear an unmistakable waiver. *Lawrence* specifically rejected such an interpretation and explained that "a contractual dispute is not the same thing as a statutory claim, *even if the issues involved are coextensive*." *Lawrence,* 841 F.3d at 85 (emphasis added).

Defendants argue that *Lawrence* supports their reading of the CBA. However, Defendants ignore the central aspect of *Lawrence*'s holding, which recognized that anti-discrimination provisions in employment agreements create unique sets of rights, above and beyond those created by statute, which can be waived. *Lawrence* 841 F.3d at 85. The Court's entire analysis rests on this fundamental distinction, which Defendants ignore. Instead, Defendants argue that the CBA in *Lawrence* was different than the CBA here and that these differences were material. MOL at 12-14. Defendants are correct that the CBAs are different, but they misread *Lawrence* and as a result misapprehend the import of the differences.[7] If anything, it is clearer here than it was *Lawrence*

---

[7] Defendants conjure three elements from *Lawrence* that they claim are material to determining whether a CBA contains an unmistakable waiver. MOL at 12-14. Plaintiff concedes that the CBA in *Lawrence* 1) did not contain a list

that the CBA does not contain a waiver of statutory rights. The main issue with the CBA in *Lawrence* was that the operative language in the waiver provision, "any disputes under [the] provision," was vague and *could* have included only contractual disputes. *Lawrence,* 841 F.3d at 85. Here the language is clear that it *does* only include contractual disputes. By limiting the waiver to "any claim that *arises* under Section 2.1" and to claims that Defendants "*violated*… Section 2.1," the CBA limits the waiver to claims for violations of the CBA, not violations of individual statutes.

Plaintiff's argument rests on a plain reading of the words in the CBA and takes seriously the meaning of those words. Defendants write off Plaintiff's textual argument, but supply no coherent alternative for understanding the operative provisions. MOL at 15-16. Instead, Defendants appear to suggest that just because Section 2.1 contains a list of anti-discrimination statutes and the arbitration provision references Section 2.1 that claims under any of the anti-discrimination statutes must be arbitrated. MOL at 13. But this position fails to account for the operative language in the waiver provision and ignores *Lawrence*'s holding that anti-discrimination provisions create separate and unique contractual rights and obligations.

Defendants' suggestion that this Court should follow the rationale from the New York State court in *Decker v. NBCUniversal Media, LLC*, Case No. 150719/18, 2018, N.Y. Misc. LEXIS 4449 (N.Y. Sup. Ct. Oct. 5, 2018), which interpreted this CBA as requiring NBC employees to arbitrate their claims, is misplaced. First, as a state trial court decision interpreting the application

---

of anti-discrimination statutes, 2) did not refer to "claims" or "causes of action", and 3) only covered disputes between the Union and the employer. But even if these elements are necessary to find an "unmistakable" waiver, the Court did not hold that these elements alone are sufficient to do so. *See Lawrence* 841 F.3d at 84 (noting that an "unmistakable" wavier requires specific references to the statutes in question). On the contrary, the *Lawrence* Court made clear that it was the actual "wording" of the relevant provisions (and not just the inclusion of random words or lists) that determined whether an "unmistakable" waiver was made. *Lawrence* 841 F.3d at 85 (analyzing the "relevant wording" of the arbitration provision and determining that it "could be interpreted to mean disputes under the CBA and not claims under antidiscrimination statutes").

of the FAA, this Court is not bound by the *Decker* decision. *See, e.g., Svensson v. Securian Life Ins. Co.,* F.Supp.2d 521, 524 n.4 (S.D.N.Y. 2010) (noting that a federal court is not bound by a state trial court decision). But more importantly, and respectfully, the *Decker* Court makes the same mistake as Defendants – it fails to account for how Plaintiff's statutory claims "arise" out of Section 2.1 and confuses *Lawrence*'s textual analysis of the specific CBA anti-discrimination provision in that case, with a checklist for determining whether specific statutory claims have been waived. *Decker* 2018, N.Y. Misc. LEXIS 4449 at *13-15. Contrary to Defendants' position and the *Decker* Court's decision, *Lawrence* does not hold that if a CBA refers to anti-discrimination statutes, contains the terms "claims" or "causes of action", and applies to an employee, there is necessarily a clear and unmistakable waiver of an employee's right to bring statutory claims in Court.

Plaintiff's argument is not "tired" or gimmicky. MOL at 2. It comports with the entirety of the CBA and recognizes the significance of Section 2.1. The Union obtained this provision in its collective bargaining agreement for the benefit of its members. This provision created additional protections and remedies that went above and beyond those created by the anti-discrimination statutes, including creating remedial procedures for violations of the provision. Mukhopadhyay Aff., Ex. A, p. 47 (delineating the grievance process for claims that NBC "violated the second sentence of Section 2.1"). In exchange for these additional rights, procedures, and remedies, Plaintiff has waived her ability to bring contract claims against Defendants in Court. This is not an insignificant or token waiver of rights. It is meaningful, and this interpretation provides a full explanation for each provision and operative term in the CBA. *See Aeronautical Indus. Dist. Lodge 91*, 230 F.3d at 576.

The CBA could have easily been written in countless other ways that would have made it "unmistakably clear" that Plaintiff was waiving her right to bring claims under the anti-discrimination statutes. For example, the arbitration provision could have stated that an employee may not file in court "any claim for a violation of a statute listed in Section 2.1" or "any statutory claims of discrimination, including those listed in Section 2.1." But this is not what the CBA provides – it only bars Plaintiff from asserting claims that "arise under" Section 2.1 or that Defendants violated Section 2.1.

Finally, even if this Court disagrees with Plaintiff's interpretation of the arbitration provision in the CBA, this Court should still deny Defendants' motion because, as argued above, Plaintiff's interpretation is plainly plausible. *See Lawrence,* 841 F.3d at 83 (holding that a waiver was not clear and unmistakable because the arbitration "provision may plausibly be interpreted to require arbitration of contractual disputes only"). As such, the arbitration provision in the CBA does not provide a clear and unmistakable waiver of Plaintiff's statutory right to bring her claims in this Court.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's motion should be denied. Should the Court grant Defendants' motion, Plaintiff takes no position on whether the Court should dismiss the action or stay proceedings pending arbitration. However, should the Court grant Defendants' motion, Plaintiff opposes Defendants' request for fees.


Dated: New York, New York
        February 26, 2021                                    /s/ Michael DiGiulio
                                                             D. Maimon Kirschenbaum
                                                             Michael DiGiulio
                                                             JOSEPH & KIRSCHENBAUM LLP

32 Broadway, Suite 601
New York, NY 10004
212-688-5640

*Attorneys for Plaintiff*