UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
AMY SINAVSKY,                                                      :
                                                                   :
                           Plaintiff,                              :
                                                                   :    20 Civ. 9175 (JPC)
              -v-                                                  :
                                                                   :    OPINION AND ORDER
                                                                   :
NBCUNIVERSAL MEDIA, LLC, *d/b/a* NBC, and                          :
CHRISTINE MACDONALD,                                               :
                                                                   :
                           Defendants.                             :
                                                                   :
-------------------------------------------------------------------X
JOHN P. CRONAN, United States District Judge:

      Plaintiff Amy Sinavsky, an Asian American woman, sued her employer, Defendant NBCUniversal Media, LLC ("NBCU" or the "Company"), and her former supervisor, Defendant Christine MacDonald, alleging racial discrimination under 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), as well as aiding and abetting racial discrimination under the NSHRL and the NYCHRL.  Defendants have moved to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and Federal Rules of Civil Procedure 12(b)(1) and (6).  For the reasons stated below, the Court grants Defendants' motion to compel arbitration and stays this case pending arbitration.  The Court also declines Defendants' request to award their attorneys' fees.

## I. Background

**A. Facts**

The facts in this case are largely undisputed.[1]  *Compare* Dkt. 1 ("Compl.") *with* Dkt. 13, Exh. 1 ("Mukhopadhyay Affidavit").[2]  Sinavsky worked as a Technical Associate/Operator for NBCU from August 2015 until May 10, 2020.  Compl. ¶ 1.  Sinavsky alleges that NBCU refused to give her at-home teleprompting equipment during the COVID-19 pandemic and then terminated her on the basis that she did not have that equipment.  *Id.* ¶¶ 4-6.  Sinavsky contends this was pretext and that Defendants terminated her because of her race.  *Id.* ¶¶ 6-8, 60.

Sinavsky is a member of a union, the National Association of Broadcast Employees and Technicians–Communications Workers of America (the "Union").  *Id.* ¶ 19; Mukhopadhyay Affidavit ¶ 7.  Both parties agree that, as a member of the Union, Sinavsky and NBCU's relationship was governed by a collective bargaining agreement.  Dkt. 15 ("Motion") at 1; Dkt. 16 ("Opposition") at 1; Dkt. 13, Exh. 2 ("CBA").

The CBA contains a section entitled "Grievances and Arbitration" that provides for the resolution of any disputes.  It states:

> An employee covered by the [CBA] may request that the Union file a grievance on his or her behalf, in accordance with the provisions of this Article, alleging that the Company has violated the second sentence of Section 2.1 of the [CBA, *i.e.*, the "No Discrimination" provision].  In the event the Union does not file such a grievance within the time limits set forth in this Section . . . or does not refer such a timely-filed grievance to arbitration pursuant to Section 20.6, the aggrieved employee *may submit his or her claim to the Company's mandatory dispute resolution program*

---

[1] "Courts deciding motions to compel apply a standard similar to the one applicable to a motion for summary judgment."  *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 281 n.1 (2d Cir. 2019).  "On a motion for summary judgment, the court considers all relevant, admissible evidence submitted by the parties and contained in the pleadings, depositions, answers to interrogatories, admissions and affidavits, and draws all reasonable inferences in favor of the non-moving party."  *Id.*

[2] Indraneil Mukhopadhyay is NBCU's Vice President of Labor Relations.  Mukhopadhyay Affidavit ¶ 2.  Her affidavit was submitted in support of Defendants' motion.  *Id.* ¶ 3.

> *(currently called "Solutions")*, provided such claim complies with the provisions of such program. The process described in this paragraph shall provide the *sole and exclusive* procedure for resolution of such claims, and neither the Union nor any aggrieved employee may file an action or complaint in court on any claim that arises under Section 2.1, having expressly waived the right to so file. The impartial Umpire's decision (in the case of a claim brought by the Union) or the arbitrator's decision (in the case of a claim brought by the employee through the Company's mandatory dispute resolution program) shall provide the final, binding and exclusive determination of such claim, subject only to appeal in accordance with the Federal Arbitration Act.

CBA § 20.1 (emphasis added). Section 2.1 of the CBA, in turn, contains a "No Discrimination" provision. The second sentence of section 2.1 provides, in relevant part:

> Neither the Union nor the Company will discriminate against any employee because of race . . . or any other characteristic protected by applicable federal, state or local law, in violation of such law, including but not limited to . . . Sections 1981 through 1988 of Title 42 of the United States Code, . . . the New York State Human Rights Law, the New York City Human Rights Code . . . or any other federal, state or local law prohibiting discrimination.

*Id.* § 2.1.

Solutions is a four-level dispute resolution program, which has two internal levels of review to be followed by outside mediation and arbitration. Dkt. 13, Exh. 3 ("Solutions") at 2. Solutions defines Covered Claims, *i.e.*, those that will be "accepted and processed" for mediation and arbitration, as "includ[ing] all claims that arise out of or are related to an employee's employment or cessation of employment (whether asserted by or against the Company), where a court in the jurisdiction in question would otherwise have the authority to hear and resolve the claim under any federal, state or local . . . statute, regulation or common law." *Id.* at 5. Covered Claims "must involve legally protected rights and may include," among other things "[e]mployment discrimination . . . claims, based on . . . race . . . or other characteristic protected by law." *Id.* Solutions states that the "Arbitrator, and not any court or agency, shall have exclusive authority to resolve any dispute relating to the applicability, interpretation, formation or

3

enforceability of this Agreement including, but not limited to, any claim that the entirety or any part of this Agreement is voidable or void." *Id.* at 22.

### B. Procedural History

Neither Sinavsky nor the Union filed a grievance relating to the allegations in the Complaint or submitted any claims to arbitration. Mukhopadhyay Affidavit ¶ 10. Instead, Sinavsky filed suit in this Court, bringing claims for racial discrimination under 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL, as well as claims for aiding and abetting racial discrimination under the NSHRL and the NYCHRL. Compl. ¶¶ 61-87.[3] Defendants moved to compel arbitration and to dismiss, or in the alternative, for a stay pending arbitration. Defendants state that they move pursuant to the FAA, 9 U.S.C. § 1 *et seq.*, and Federal Rules of Civil Procedure 12(b)(1) and (6). Dkt. 13; Motion at 1.[4]

## II. Legal Standard

While courts have noted that there "is a 'lack of clarity in the case law of this Circuit' as to what procedural mechanism should be employed by courts evaluating the enforceability of an arbitration agreement," the Court concludes that section 4 of the FAA, not the Federal Rules of Civil Procedure, is the proper mechanism to compel arbitration. *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 246-47 n.2 (E.D.N.Y. 2016) (quoting *Hamzaraj v. ABM Janitorial Ne. Inc.*, No. 15 Civ. 2030 (ER), 2016 WL 3571387, at *4 n. 4 (S.D.N.Y. June 27, 2016)); *see* Fed.

---

[3] It is not clear what claims are against MacDonald. MacDonald is named as a Defendant in this action but the Complaint names only NBCU in its claims for relief. *See* Compl. ¶¶ 61-87.

[4] The Complaint also states that it alleges overtime violations under the Fair Labor Standards Act ("FLSA"), 28 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq. See* Compl. ¶ 9. But there are no allegations to that effect, Sinavsky does not list either the FLSA or the NYLL in her claims for relief, and Sinavsky has not mentioned these claims in any motion papers. The Court thus assumes the Complaint's references to the FLSA and the NYLL were in error.

R. Civ. P. 81(a)(6)(B) (noting that the Federal Rules of Civil Procedure "govern proceedings" under certain statutes, including "9 U.S.C., relating to arbitration," "except as these laws provide other procedures"); 9 U.S.C. § 6 ("Any application to the court [under the FAA] shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."). The Court thus interprets this as a motion to compel arbitration pursuant to 9 U.S.C. § 4.

Under the FAA, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. The FAA embodies "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). As such, it is designed to "preserve parties' ability to agree to arbitrate, rather than litigate, [their] disputes." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). Under section 4 of the FAA:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4.

When faced with a motion to compel arbitration, a court faces two principal questions: (1) did the parties agree to arbitrate and (2) if so, what is the scope of their arbitration agreement? *Starke v. Squaretrade, Inc.*, No. 16 Civ. 7036 (NGG), 2017 WL 3328236, at *5 (E.D.N.Y. Aug. 3, 2017), *aff'd*, 913 F.3d 279 (2d Cir. 2019). "In other words, a party opposing a motion to compel arbitration may challenge the existence or enforceability of an arbitration agreement, or may

5

challenge the applicability of such an agreement to the claims at issue." *Bezek v. NBC Universal*, No. 3:17 Civ. 1087 (JCH), 2018 WL 2337131, at *14 (D. Conn. May 23, 2018), *aff'd*, 770 F. App'x 599 (2d Cir. 2019). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [a court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Starke*, 913 F.3d at 288 (quoting *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011)).

### III. Discussion

Defendants move to compel arbitration on the basis that (1) Sinavsky agreed to arbitrate by signing the CBA, Motion at 7-8, (2) Solutions, which is binding on Sinavsky, delegates the resolution of threshold arbitrability issues to the arbitrator, *id.* at 8-12, and (3) even if the Court were to determine the arbitrability of Sinavsky's claims, they are within the scope of the arbitration clause in the CBA and Solutions, *id.* at 12-16. Because the Court agrees with Defendants that Sinavsky agreed to arbitrate in accordance with the CBA and Solutions, and that Solutions contains a valid delegation clause, the Court does not address whether Sinavsky's claims are within the scope of the arbitration agreement.

**A. Agreement to Arbitrate**

The CBA governed the terms of Sinavsky's employment at NBCU. *See Plummer v. Klepak*, 48 N.Y.2d 486, 489 (1979) ("Petitioner, having designated the union as his collective bargaining agent, is bound by the terms of the agreement negotiated for and made on his behalf."); Motion at 3; Opposition at 1. Sinavsky does not dispute that she agreed to arbitrate some claims

6

by signing the CBA.  Opposition at 2 (admitting that "the waiver provision in the CBA bars [Sinavsky] from bringing some claims in Court").  However, Sinavsky contends that "[n]either the Union, nor [Sinavsky], ha[s] entered into an agreement with NBC that binds them to the terms of the 'Solutions' manual or to any other particular dispute resolution program." *Id.* at 5.  As such, Sinavsky argues that Solutions' delegation provision is not binding on her.

Sinavsky contends that her argument "could be viewed either as a step one argument (contract formation)—that the parties did not agree to arbitrate the issue of arbitrability because the Solutions manual is not binding on Plaintiff—or as a step two argument (scope of agreement)—that the arbitration provision in the CBA does contain a waiver of Plaintiff's right to have this Court decide the issue of the arbitrability of Plaintiff's claims." *Id.* at 8 n.3.  Because Sinavsky's argument concerns what the parties actually agreed to—not the scope of an arbitration clause that the parties concede they agreed to—the Court finds that Sinavsky's argument is best viewed as disputing the formation of a valid contract encompassing Solutions.

When assessing whether parties agreed to arbitrate, the court looks to state law principles of contract formation.  *Starke*, 913 F.3d at 288.  Under New York law, "in order to be binding, a contract requires a 'meeting of the minds' and 'a manifestation of mutual assent.'"  *Id.* at 288-89 (quoting *Express Indus. & Terminal Corp. v. N.Y. Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999)).  This means that the parties must agree on all material terms.  *Id.* at 289 (citing *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109 (1981)); *accord Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004).  If a contract "refer[s] to" and "sufficiently describe[s]" another document, that document "may be made a part of the [contract] as if incorporated into the body of it."  *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (quoting *Jones v. Cunard S.S. Co.*, 263 N.Y.S. 769, 771 (App. Div. 1933)).  That document "must be so referred to

and described in the instrument that the [document] may be *identified beyond all reasonable doubt.*" *Id.* (quoting *Chiacchia v. Nat'l Westminster Bank USA*, 507 N.Y.S.2d 888, 889-90 (App. Div. 1986)). A general reference to another document is insufficient. *Gramercy Wrecking & Env't Contracttors v. Trucking Emps. of N.J. Welfare Fund, Inc.*, No. 17 Civ. 7101 (BMC), 2018 WL 2709202, at *3 (E.D.N.Y. June 5, 2018), *aff'd sub nom. Gramercy Wrecking & Env't Contractors v. Trucking Emps. of N.J. Welfare Fund, Inc.*, 767 F. App'x 97 (2d Cir. 2019).

Moreover, absent fraud "or other wrongful conduct," a party to a contract "is conclusively presumed to know its contents and to assent to them, and he is therefore bound by its terms and conditions." *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993) (citing *Level Export Corp. v. Wolz, Aiken & Co.*, 305 N.Y. 82, 87 (1953)). This includes terms incorporated by reference. *See Pagaduan v. Carnival Corp.*, 709 F. App'x 713, 716 (2d Cir. 2017) (citing *Level Export Corp.*, 305 N.Y. at 86; and then citing *4Connections LLC v. Optical Commc'ns Grp.*, 618 F. Supp. 2d 178, 183-84 (E.D.N.Y. 2009)). As such, a party's "failure to read a duly incorporated document will not excuse the obligation to be bound by its terms," so long as the document "is clearly identified in the agreement." *PaineWebber Inc.*, 81 F.3d at 1201.

The CBA contains more than just a passing reference to Solutions. The CBA states that an "aggrieved employee may submit his or her claim to the Company's mandatory dispute resolution program (currently called 'Solutions'), provided such claim complies with the provisions of such program." CBA § 20.1. The CBA provides that the dispute resolution process via Solutions is "the sole and exclusive procedure for resolution of such claims, and neither the Union nor any aggrieved employee may file an action or complaint in court on any claim that arises under Section 2.1, having expressly waived the right to so file." *Id.* That provision then makes clear that the

"the arbitrator's decision . . . in the case of a claim brought by the employee through the Company's mandatory dispute resolution program" will be "final, binding and exclusive." *Id.* Thus, by referring to Solutions by name, making it clear that the employee must pursue that program, and stating that arbitration pursuant to Solutions is binding, the CBA clearly and unambiguously incorporates Solutions.

Sinavsky's arguments to the contrary, which are not based in any case law, are unavailing. Sinavsky suggests that the CBA was required to include the "terms" of the Solutions manual to incorporate it. Opposition at 9. But the CBA was not required to list all material terms of Solutions; that is the point of incorporation by reference. Sinavsky also contends that Solutions cannot be binding because the CBA states that the Company's dispute resolution program is "currently called 'Solutions,'" meaning that "any specific term or procedure in a dispute resolution program is subject to change." *Id.* Not so. That the name of the company's dispute resolution program may change does not have any legal relevance to whether it was incorporated by reference. Sinavsky thus agreed to be bound by the terms of Solutions.

### B. Scope of the Arbitration Agreement

Having concluded that Solutions is binding on Sinavsky, the Court turns to whether Solutions delegates questions of arbitrability to an arbitrator. "Under the FAA, there is a general presumption that the issue of arbitrability," *i.e.*, the question of whether a particular issue is to be arbitrated, "should be resolved by the courts." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *see First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995). However, "[j]ust as the parties may elect through their contract to have arbitrators (rather than a court) resolve categories of disputes between them, they may similarly contract to have arbitrators (rather than a court) decide whether a particular dispute is to be arbitrated under the terms of the

contract." *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 189-90 (2d Cir. 2019). "[W]hen the parties have contracted to submit the question of the arbitrability of a dispute to arbitrators, courts must respect and enforce that contractual choice." *Id.* at 190. "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options*, 514 U.S. at 944 (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, (1986)).[5]

Solutions contains a clear delegation provision. The delegation provision in Solutions states: "The Arbitrator, and not any court or agency, shall have exclusive authority to resolve any dispute relating to the applicability, interpretation, formation, or enforceability of this Agreement, including, but not limited to, any claim that the entirety or any part of this Agreement is voidable or void." Solutions at 22. The Supreme Court in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010), considered a virtually identical delegation provision and held that unless an employee "challenge[s] the delegation provision specifically," a court must treat the delegation provision as "valid" and "enforce[able]." *Id.* at 72; *see also Bar-Ayal v. Time Warner Cable Inc.*, No. 03 Civ. 9905 (KMW), 2006 WL 2990032, at *7-8 (S.D.N.Y. Oct. 16, 2006) (finding a clause providing that "the arbitrability of disputes shall be determined by the arbitrator . . . constitutes sufficiently clear and unmistakable evidence that the parties intended to have issues of arbitrability decided by the arbitrator"); *Ahmed v. Citibank, N.A.*, No. 19 Civ. 4439 (MKB) (SJB), 2020 WL

---

[5] While Sinavsky argues that she has not clearly and unmistakably waived her right to bring her statutory claims in federal court, Opposition at 12-18, she does not argue that her statutory claims are not arbitrable. Courts generally hold that the question of whether Congress intended for certain statutory claims to be arbitrable is a question for the courts, notwithstanding any delegation provision, whereas the question of whether a party has agreed to arbitrate statutory claims can be delegated to the arbitrator. *See, e.g.*, *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 395 (S.D.N.Y. 2021); *King v. Stage 29 Prods., LLC*, No. 19 Civ. 9549 (CM), 2020 WL 3577925, at *5 (S.D.N.Y. July 1, 2020); *Bezek*, 2018 WL 2337131, at *14-16.

2988666, at *5 (E.D.N.Y. June 2, 2020) (holding that virtually identical delegation clauses "expressly require[] that claims regarding the enforceability of the arbitration agreement must be delegated to the arbitrator"). And other courts have enforced the Solutions delegation provision specifically. *See, e.g.*, *Bezek*, 2018 WL 2337131, at *16 ("The Solutions Manual at issue here clearly delegates questions of the scope of the arbitration agreement to the arbitrator. Therefore, to the extent that Bezek takes issue with the applicability of the Solutions Manual to her claims, that is a question for the arbitrator, not this court, to determine."); *Pingel v. Gen. Elec. Co.*, No. 3:14 Civ. 632 (CSH), 2014 WL 7334588, at *4-5 (D. Conn. Dec. 19, 2014).

Sinavsky contends that, even if Solutions were incorporated into the CBA, the delegation provision does not govern here because the delegation provision in Solutions, "by its own terms, applies only to the arbitrability of Solutions, not the CBA." Opposition at 10. But, as noted above, Sinavsky agreed to resolve employment discrimination disputes via Solutions, and the delegation provision gives the Arbitrator the exclusive authority to "resolve any dispute relating to the applicability" of Solutions. Solutions at 22. Thus it is for the arbitrator to decide whether the arbitration agreement covers Sinavsky's claims.

**C. Stay or Dismiss**

Having granted Defendants' motion to compel arbitration, the only remaining question is whether to dismiss or stay this case pending arbitration. Defendants ask the Court to dismiss or, in the alternative, to stay the proceedings, Motion at 17, and Sinavsky takes no position between the two, Opposition at 18. The Second Circuit has "counsel[ed] that courts should stay litigation pending arbitration to avoid 'convert[ing] an otherwise-unappealable interlocutory stay order into an appealable final dismissal order,' thus "enabl[ing] parties to proceed to arbitration directly." *Dylan 140 LLC v. Figueroa as Tr. of Bldg. Serv. 32BJ Health Fund*, 982 F.3d 851, 859 n.2 (2d

Cir. 2020) (second and third alteration in original) (quoting *Katz v. Cellco P'ship*, 794 F.3d 341, 345, 346 (2d Cir. 2015)). A stay is particularly appropriate where the parties must arbitrate the question of the arbitrability, since any claims that the arbitrator determines are not arbitrable would proceed before this Court. *See Bonner v. Point72 Asset Mgmt., L.P.*, No. 18 Civ. 1233 (AT), 2018 WL 11223154, at *3 (S.D.N.Y. July 5, 2018). Accordingly, the Court will stay this action pending arbitration.

### D. Request for Attorneys' Fees

Defendants request fees related to filing the motion to compel arbitration on the basis that "this matter is straightforward" and they provided Sinavsky with a copy of *Decker v. NBCUniversal Media, LLC*, No. 150719/18, 2018 WL 4849367 (N.Y. Sup. Ct. Oct. 05, 2018), in which a New York trial court enforced this same CBA to compel arbitration of the plaintiff's discrimination claims. Motion at 2.

A court "may, pursuant to its inherent equitable powers, assess attorneys' fees and costs when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Local 338*, 118 F.3d 892, 898 (2d Cir. 1997) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). Courts have awarded attorney's fees in "cases involving unfounded opposition to petitions to compel arbitration . . . where 'the party refusing arbitration acted without justification or did not have a reasonable chance to prevail.'" *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10 Civ. 1853 (PGG), 2011 WL 1002439, at *3 (S.D.N.Y. Mar. 16, 2011) (quoting *Sands Bros. & Co., Ltd. v. Nasser*, No. 03 Civ. 8128 (BSJ), 2004 WL 26550, at *3 (S.D.N.Y. Jan. 5, 2004)), *aff'd*, 483 F. App'x 634 (2d Cir. 2012). However, courts regularly deny fees where the plaintiff has made at least colorable, even if ultimately unsuccessful, arguments. *See, e.g., Josie-Delerme v. Am. Gen.*

*Fin. Corp.*, No. 08 Civ. 3166 (NG), 2009 WL 2366591, at *5 (E.D.N.Y. July 31, 2009); *Tri–Built Const., Inc. v. N.Y.C. Dist. Council of Carpenters Pension Fund*, No. 05 Civ. 694 (WHP), 2005 WL 1265865, at *3 (S.D.N.Y. May 17, 2005); *Austin Nichols & Co. v. Wine, Liquor & Distillery Workers' Union, Local No. 1*, No. 80 Civ. 2063 (SDA), 1980 WL 2154, at *3 (S.D.N.Y. Nov. 12, 1980).

The Court declines to award fees here. Defendants made only a cursory request for fees, which they did not mention again in their reply brief. *See Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 340 (S.D.N.Y. 2014) (denying fees and finding it "[n]otabl[e]" that "after Plaintiff filed an Opposition Memorandum of Law articulating her position, Defendants did not appear to press their specific request for fees in their Reply Memorandum of Law"). And while Defendants may have provided Sinavsky with a copy of the opinion in *Decker*, that case was both not binding on this Court and did not address whether an arbitrator must address questions of arbitrability. The Court thus cannot conclude that the motion was so frivolous as to warrant fees.

## IV. Conclusion

For the aforementioned reasons, the Court grants Defendants' motion to compel arbitration but denies their motion for attorneys' fees. This case will remain stayed pending arbitration. The Clerk of the Court is respectfully directed terminate the motion pending at Docket Number 13.

SO ORDERED.

Dated: September 13, 2021  
New York, New York

_____  
JOHN P. CRONAN  
United States District Judge